[Civ. No. 4749. Second Appellate District, Division Two.—December 22, 1927.]

C. D. HARTSHORN, Appellant, v. ELITE PRINTING COMPANY (a Corporation), Defendant; F. M. COUCH, Trustee, etc., Respondent.

Harry W. Horton for Appellant.

Jas. W. Glassford for Respondent.

VALENTINE, J., *pro tem.*—An action in replevin was commenced by the plaintiff and appellant June 27, 1921, against defendant for the recovery of the possession or value of the personal property involved in this proceeding. The appellant alleged ownership and right to possession. The defendant answered claiming right to possession and ownership as purchasers of the property from F. M. Couch, as trustee; F. M. Couch, as trustee for Blake, Moffitt & Towne, intervened and claimed ownership to the property as purchaser from one E. F. Howe.

The property in question was originally purchased by E. F. Howe from the American Type Founders Company, under and by two conditional sales contracts; Howe was publishing a newspaper called "The Zanjero," in the city

of El Centro, and the property in question was practically the entire operating "plant" of this newspaper. Howe was in default, and other parties (the plaintiff's group) paid the balance due on these contracts to the American Type Founders Company to enable Howe to continue the publication of said newspaper for the purpose of advocating the completion of a certain irrigation canal, called the All American Canal, which was deemed to be for the benefit, among others, of the parties arranging such payment. E. F. Howe continued the publication of the newspaper and to advertise and advocate the cause of the All American Canal under a verbal agreement or understanding, as claimed by the intervener, that certain members of "plaintiff's group" should pay to the American Type Founders Company the balance due on the two contracts, and that Howe should continue to so advertise to the extent of $100 per month until such time as the total advertising amounted to a sufficient sum to "wipe out" such balance, the plaintiff's group taking an assignment in blank of the two conditional sales contracts as security until E. F. Howe should repay them "by means of advertising and editorial service in said newspaper" as aforesaid, which the intervener claims was done.

The transactions were numerous and involved, but we believe this sufficiently states the facts and contentions of the parties material to the issue raised on this appeal.

The defendant Elite Printing Company appears to have abandoned its claim, and has filed no brief on this appeal.

The trial court found for the intervener, F. M. Couch, as trustee, and rendered judgment that said intervener, as trustee, have and recover from the plaintiff possession of said property or, if delivery could not be had, for the sum of $3,441.58, the admitted value. From this judgment and an order denying appellant's motion for a new trial plaintiff appeals upon the ground that the evidence does not support the trial court's findings and judgment.

It will only be necessary to consider appellant's specifications of error designated "(a)" and "(b)," as their determination disposes of the others:

"(a) That there is no evidence to support the finding of the court that there was any contract or agreement between the plaintiff and any of the parties for whom the

plaintiff took the assignment of said contracts as trustee, by the terms of which any services rendered or to be rendered by Mr. Howe or his newspaper, the Zanjero, were in any way to be in payment for or to satisfy the contract so assigned to the plaintiff as trustee or the payments due thereon or that any such services were to be in payment of the obligations on the Rehkopf note.

"(b) That the evidence is insufficient to support the finding and decision to the effect that any contract or agreement between the Imperial Laguna Water Company and Mr. Howe or his paper, the Zanjero, was in effect and fact a contract and agreement between the plaintiff and the persons he represented as trustee."

The trial court's finding "IV" is as follows:

"That on the 19th day of March, 1918, the said Edgar F. Howe entered into an agreement whereby the following named persons agreed to pay to the American Type Founders Company, the unpaid balance on the two conditional contracts of sale between the said Type Founders Company as vendors and Edgar F. Howe, as vendee, to-wit: Ed R. Gorman; T. A. Stevens; C. L. Gillett; D. W. Weist; Ernest Poston; C. D. Hartshorn; C. M. Berry; T. P. Banta and L. R. Bonstiele. That in accordance with said agreement the said persons paid all of the unpaid purchase price as stipulated in said contracts of sale and took from the said Founders Company an assignment of said contracts in blank as security for the repayment to the said parties by the said Edgar F. Howe, of the amount so advanced and paid by said parties to the said Type Founders Company as the unpaid balance on said conditional sales contract. It was further agreed and understood between the said parties and Edgar F. Howe that said unpaid balance should be paid by Howe by means of advertising and editorial service in the newspaper then owned by Howe, named the Zanjero, and the said Howe did supply such advertising publicity and editorial service in conformity with said agreement to such an extent as to fully pay and satisfy the whole amount of the unpaid balance then due and owing on said conditional contracts of sale and which had been advanced by said parties heretofore named. That said conditional

contracts of sale were assigned to C. D. Hartshorn as trustee for the use and benefit of the above named parties."

The evidence is voluminous and conflicting. C. N. Berry, one of plaintiff's witnesses (and one of "plaintiff's group"), although denying any knowledge of a contract, admits writing Howe: "I note with much pleasure that the contract has been ratified by the people at the polls by a vote of nearly three to one. This result was obtained and I give you full credit for it, largely thro' your increasing advocacy of the project."

He also testified that the payment of the money and the taking the assignments "might have been to the individual interest of every man who supported the All American Canal"; and that "the object in paying off the balance due on the contracts and taking the assignment was that they, with others, were ardent supporters in support of the All American Canal issue"; that Howe's newspaper, "The Zanjero," was supporting the All American Canal issue; that "the individuals wished to see it continue"; that "it was understood that Howe would have to pay the balance due for the machinery before he would get it"; that "the understanding was made with Mr. Howe as editor of the 'Zanjero' by the persons whose names were on the Rehkopf note (the plaintiff's group); that Howe would proceed as he had in the past to defend the policies with reference to the All American Canal and that we were not to pay him anything for it," "we had been paying him all the time for this purpose."

Mark M. Rose, another of plaintiff's witnesses (and also of "plaintiff's group"), testified that the company had been paying Mr. Howe $100 a month "in order to keep his paper going," but was "not bound to pay it." That "Mr. Howe was entitled to the support and respect of every one hundred per cent American in the Imperial Valley."

E. R. Gorman (another of "plaintiff's group"), plaintiff's witness, testified that he "understood that the Imperial Laguna Water Company" ("plaintiff's group" were officers and stockholders of this company) "was to take care of the Rehkopf note by payments of $100 per month; that he so represented to the other men signing the note with him."

Howe's testimony is voluminous but on the question of this contract or agreement is consistently to the effect that he went ahead in good faith as editor and publisher of the paper relying upon his understanding that his advertising and supporting the idea of the All American Canal was to continue at the rate of $100 per month until the amount of the unpaid balance on the conditional sales contract was "wiped out," and that this was done.

We think a further detailed consideration of the evidence is unnecessary.

■ A careful examination of the transcript shows that there was sufficient evidence to support the findings of the trial court.

The principle that under these circumstances this court will not disturb the findings of the trial court is so well established that we will emulate the commendable course pursued by counsel for both sides on this appeal and cite no unnecessary authorities.

In the final analysis it may fairly be said that the evidence on both sides disclosed that it is not disputed that a contract or understanding existed between the plaintiff and Howe that the latter should continue through his paper "The Zanjero" to advertise and support the cause of the All American Canal as he had been doing until the amount which plaintiff and his group had borrowed from Rehkopf to pay the balance due on the two conditional sales contracts, had been repaid, and that the real issue was and is whether this amount should be repaid in cash as claimed by plaintiff and appellant or by advertising and support by Howe in his paper of the All American Canal as claimed by intervener and his witnesses.

Believing the latter as he did the trial court could not have found for plaintiff and appellant. To have done so would have been in violation of the principle laid down in *Blood* v. *La Serena Land & Water Co.*, 134 Cal. 361 [66 Pac. 317] : "The law does not allow a corporation to retain the benefits which it has received on the contract and escape liability upon it."

Judgment affirmed.

Works, P. J., and Thompson, J., concurred.

758

A petition for a rehearing of this cause was denied by the district court of appeal on January 20, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1928.

All the Justices present concurred.